IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2003

## JAMES E. POLK v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Maury County**
**No. 9578     Jim T. Hamilton, Judge**

_____

**No. M2002-02430-CCA-R3-PC - Filed September 30, 2003**

_____

A Maury County jury convicted the Petitioner of aggravated robbery, and the trial court sentenced him to twelve years in the Tennessee Department of Correction.  On direct appeal, this Court affirmed the conviction, and the Tennessee Supreme Court denied the Defendant's application for permission to appeal.  The Petitioner then sought post-conviction relief, alleging that he was denied due process and effective assistance of counsel.  Following a hearing, the post-conviction court dismissed the petition, and this appeal ensued.  We affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, James E. Polk.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Brent C. Cherry, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Robert C. Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts

Our Court summarized the underlying facts of the Petitioner's case on direct appeal as follows:

On March 23, 1993, the Big Lots store in Columbia, Tennessee was robbed. About fifteen minutes before the store was going to close an employee named Elizabeth Faught saw two men standing in the store. She asked them if they needed any help, and one of the men said he was shopping for a birthday present for his

girlfriend. As she was talking to the first man, the other one, a tall man wearing sunglasses, who she identified as the Defendant, walked around to another aisle. Faught found him in the warehouse, which was restricted to employees, and told him he had to get out.

She returned to the front of the store to check out. The manager then made the closing announcement. At this time, Faught realized that the two men had not left yet, and she and another employee went on a security check to find the two men. They found them in the warehouse. The perpetrators pulled guns on the two employees. At this time, the perpetrators had something around their faces and wore sunglasses. Faught was sure that these were the same individuals she had spoken with earlier.

Eventually the other employees, including the manager, were brought back to the warehouse and held at gunpoint. The perpetrators then ordered the manager to give them the combination to the safe, which he did. However, the perpetrators could not get the safe open and the manager eventually opened it himself. The perpetrators took the money in a garbage can and left the store. The police arrived shortly thereafter.

State v. James Polk, No. 01C01-9407-CC-00257, 1995 WL 382616, at *1 (Tenn. Crim. App. June 28, 1995).

A Maury County jury convicted the Petitioner for aggravated robbery on March 1, 1994, and the trial court imposed a twelve-year sentence. This sentence was to be served consecutively with another twelve-year sentence in an unrelated aggravated robbery conviction. The Petitioner did not file a motion for a new trial. On March 28, 1994, the Petitioner appealed the judgment, asserting two issues: (1) whether the trial court erred in failing to suppress a witness's in-court identification of the Petitioner after she viewed a photo line-up that the trial judge deemed to be unreasonably suggestive; and (2) whether the evidence was sufficient to convict the Petitioner. This Court affirmed the judgment on direct appeal, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal.

On August 1, 1996, the Petitioner filed a pro se post-conviction petition. On August 30, 1996, the post-conviction court appointed Hershell Koger to represent the Petitioner in this post-conviction matter. Koger filed an amendment to Petitioner's original petition for post-conviction relief on November 5, 2001. In his petition, the Petitioner asserted that he should be granted post-conviction relief based upon two issues: (1) ineffective assistance of counsel; and (2) denial of due process. The post-conviction court conducted a hearing on the petition, as amended, on September 13, 2002. The court subsequently filed an order dismissing the petition on September 25, 2002.

The following evidence was presented at the post-conviction hearing: The Petitioner testified that he was a prisoner in the Tennessee Department of Correction serving two consecutive twelve

year sentences. He reported that during the preliminary hearing, Detective Don Rose, the primary investigator in this case, read a statement from co-defendant Sigmond Scott which implicated the Petitioner in the robbery.[1] He stated that although this statement was read at the preliminary hearing, at no point did Scott or the other co-defendant actually testify. On cross-examination, the Petitioner acknowledged that the co-defendant's statement was never introduced at trial. The Petitioner also testified that Detective Rose stated that Faught, a witness to the robbery, could only identify Scott as one of the robbers, contradicting Detective Rose's previous testimony that Faught picked the Petitioner out of a lineup on the day prior to the preliminary hearing. The Petitioner maintained that while Faught was cross-examined on the identification issue at the suppression hearing, his trial counsel did not challenge Faught's testimony on this issue at trial.

The Petitioner also testified about a juror on his case who worked with the wife of the assistant district attorney in the case. The Petitioner stated that he was not aware of the juror's relationship to the prosecutor until after the trial when he read the record. He insisted that his trial lawyer did not discuss the issue with him at the time. The Petitioner stated that had he known that this particular juror worked with the prosecutor's wife, he would have asked to have her removed from the jury.

The Petitioner further testified about another juror on his case who told the trial court that he overheard a couple of witnesses discussing the case in the hall. The Petitioner explained that a juror raised his hand after returning from a break and advised the trial court that he heard some witnesses discussing the case outside the courtroom. The Petitioner testified that as a result of this revelation, his trial lawyer and the prosecutor approached the trial judge for a bench conference, and the trial court subsequently adjourned for the day. The Petitioner claimed that the trial judge referred to this issue in the following excerpt from the trial transcript:

> Let the record show the jury is all present. Counsel and parties are all present. I'm going to talk a little bit informally. We have come with some legal problems that I have to resolve. It's now 3:25 in the afternoon. I'm going to take a while to do it. I don't see any reason to hold the jury any longer on this afternoon, and we'll try to have all of these kind of things worked out in the morning, starting at 9:00 o'clock.

The Petitioner stated that when the trial resumed the next day, all twelve jurors remained on the jury. He explained that his trial lawyer did not tell him what was discussed at the bench conference or what his options were regarding this juror. The petitioner testified that if he had known his rights, he would have asked his trial lawyer to press for a mistrial or have the juror removed from the jury. He testified that the trial judge's comment about having a little problem to work out referred to this issue.

On cross-examination, the Petitioner acknowledged that the issues of sufficiency of the evidence and identification were both raised and disposed of on appeal, but he stated that his trial

---

[1]The post-conviction court admitted the written statement by Scott into evidence.

lawyer failed to raise the issues of the juror overhearing witnesses outside the courtroom and the allegedly improper indictment on appeal. The Petitioner testified that he and his lawyer did not discuss which issues would be addressed on direct appeal, and he assumed his lawyer knew to appeal those particular issues. The Petitioner stated that he had no legal training at the time of his trial.

The Petitioner's counsel at trial and on direct appeal, Dan Murphy ("Counsel"), testified that after the preliminary hearing, the Petitioner and a co-defendant were bound over to the grand jury, which returned an indictment. Regarding the juror who worked with the prosecutor's wife, Counsel stated,

> I remember, I think, us having a sidebar about that issue. But it was nothing that concerned me, and I asked [the Petitioner] about all of the jurors, and if everyone was acceptable to him. And if my memory served me right, we used several peremptory challenges on different people. And he would say he didn't want that person and I would say I didn't want that person, or vice versa. But that girl was acceptable to both me and him.

However, Counsel claimed to have no recollection of a juror overhearing witnesses, and he stated that the first time he heard of the issue was upon being contacted by Petitioner's post-conviction counsel.

Counsel testified that on the Petitioner's direct appeal from his conviction, the court disposed of the issues of sufficiency of the evidence and suppression of the eye witness's allegedly tainted identification of the Petitioner. He admitted that he did not recall whether he had cross-examined Detective Rose regarding his statement that the eye witness Faught could identify only one of the robbers.

Counsel stated that at the time of the trial he had been practicing law for about sixteen months and that thirty to forty percent of his workload was handling criminal and juvenile cases. He estimated that at the time of trial, he spent half of his time in circuit court, as opposed to general sessions and juvenile court. Counsel stated that this trial was his first solo jury trial, but he had been second chair in several prior jury trials. He acknowledged that in this case, identification was an essential aspect of the defense. However, he stated that he did not attempt to have Faught's testimony suppressed prior to the trial because he did not notice the problem with the photo lineup until then.

Counsel testified that he did not remember a statement allegedly given by Detective Rose in which he said that Faught could only identify one robber. Counsel acknowledged that the Petitioner's only alibi, his mother, was not "lock-tight." When confronted with a letter he had written to the Petitioner that stated that he had no recollection of a preliminary hearing, he admitted that, at the time, he did not remember such a hearing, but stated that according to his notes and the general sessions warrant such a hearing had in fact taken place. When questioned about the comment in the prosecution's opening statement regarding a co-defendant who would supposedly

-4-

testify, Counsel referred to his notes and concluded that a co-defendant had been prepared for questioning by the State, but the witness exercised his Fifth Amendment rights and was not called to the stand.

## II. Analysis

On appeal, the Petitioner argues that the post-conviction court erred by finding that the Petitioner was not denied effective assistance of counsel and that his due process rights had not been violated. In his petition and on appeal, the Petitioner essentially maintains that his due process rights were violated because he was denied effective assistance of counsel at trial and on his direct appeal. Accordingly, we will address both issues by deciding whether the post-conviction court erred in finding that Petitioner's counsel was effective.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn.1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant

circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

On appeal, the Petitioner asserts three grounds to support his claim that he received ineffective assistance of counsel: (1) Counsel failed to fully inform the Petitioner that one of the jurors worked with the wife of the prosecutor and failed to use his final peremptory challenge to exclude that juror; (2) Counsel failed to inform the Petitioner about his options regarding the juror who allegedly overheard witnesses discussing the case outside the courtroom; and (3) Counsel failed to file a motion for a new trial in the Petitioner's case which limited the issues on direct appeal. We note that the Petitioner raised several other issues in his original petition and his amended petition regarding ineffective assistance of counsel and denial of due process, but he failed to raise these issues in his appellate brief. As a result, the Petitioner has waived these issues. Tenn. R. App. P. 13(b) (stating that "Review generally will extend only to those issues presented for review"); Nichols v. State, 90 S.W.3d 576, 607 (Tenn. 2002).

First, the Petitioner argues that he received ineffective assistance of counsel because his Counsel failed to fully inform the Petitioner regarding the juror who worked with the prosecutor's wife. The Petitioner argues that Counsel's failure to tell him about this juror's potential conflict of interest prevented him from making an informed decision concerning his use of peremptory challenges. The only reference to this issue in the trial record was a statement by the judge following a bench conference, in which he said, "[t]he . . . bench conference was relative to prospective juror, now a juror, Ms. Wall, who Mr. Durham advised at bench conference was an employee of his wife at a place of employment in Franklin, and the defense counsel chose not to further voir dire in that respect." Although Counsel failed to object to the juror's continued presence on the jury, and he allegedly failed to discuss the issue with his client, no evidence was presented at the post-conviction hearing to show that the Petitioner was prejudiced by the juror serving on the jury. Further, Counsel disputed the Petitioner's testimony by stating that he had discussed all of the jurors with the Petitioner at the time of jury selection and that they both had found them all to be acceptable. We find this claim to be without merit.

Second, the Petitioner argues that his trial lawyer was ineffective for failing to take appropriate action regarding the juror who allegedly overheard witnesses discussing the case outside the courtroom and for failing to ensure that a proper record was made of the court proceedings relating to this incident. The trial transcript is silent regarding a juror alerting the trial judge about overhearing witnesses outside the courtroom. Counsel testified that he did not recall any issue being raised during the trial regarding a juror overhearing witnesses, and he explained that it was brought to his attention for the first time by the Petitioner's post-conviction counsel. The Petitioner has

failed to prove his factual allegations on the matter by clear and convincing evidence. Moreover, even if the Petitioner's testimony was accurate, he has failed to prove any actual prejudice. We find that this claim is also without merit.

Finally, the Petitioner contends that his trial counsel's failure to file a motion for a new trial interfered with his substantive right to an appeal. "It cannot be doubted that a criminal defendant has a statutory right to one level of appellate review." Collins v. State, 670 S.W.2d 219, 221 (Tenn. 1984). The Petitioner maintains that although the issues of sufficiency of the evidence and tainted identification testimony were raised and disposed of on direct appeal, Counsel's failure to file a new trial motion barred him from arguing two additional issues. The first of these issues was that the trial court failed to instruct the jury that only the Petitioner was going to trial under the indictment, despite the fact that the indictment named two additional co-defendants. The indictment was read and submitted to the jury as written. The court decided to give a clarifying jury instruction when counsel objected early in the trial to the wording of the indictment, but the court later failed to give the instruction. The second issue barred from direct appeal was that a juror allegedly overheard a witness discussing the case.

Although these two grounds could have been argued on appeal had the Petitioner's counsel filed a timely motion for a new trial, the Petitioner has failed to demonstrate that his claims were meritorious or that any prejudice resulted from his lawyer's omission. The Petitioner cites Penson v. Ohio, 488 U.S. 75, 86 (1988), for the proposition that prejudice to the defendant is presumed where he is completely denied the assistance of appellate counsel. However, because Counsel represented the Petitioner on direct appeal on two other grounds, the Petitioner was not denied appellate counsel and the Penson presumption of prejudice is inapplicable to this case. The burden of proving prejudice therefore remains with the Petitioner, and he has failed to meet that burden. We therefore find this claim to be without merit.

Thus, we conclude that the post-conviction court properly found that counsel was not deficient in his performance, and, by extension, that the Petitioner's due process rights were not violated. Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE